UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID A. WALKO,<br><br>    Plaintiff<br><br>V.<br><br>LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, THE BOSTON UNIVERSITY GROUP DISABILITY INCOME PLAN AND BOSTON UNIVERSITY,<br><br>    Defendants | CIVIL ACTION NO. |

## COMPLAINT

### INTRODUCTION

1. Plaintiff, David A. Walko ("Mr. Walko"), brings this action against the Defendants, Liberty Life Assurance Company of America ("Liberty"), the Boston University Group Disability Income Plan ("Plan") and Boston University (collectively referred to as "Defendants") for violation of the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et. seq.* ("ERISA"). Mr. Walko is a participant in an ERISA welfare benefit plan insured and administered by Liberty and self-insured by Boston University.

2. Mr. Walko is filing this action to: 1) recover long-term disability ("LTD") benefits due him under the LTD Plan; 2) recover retirement benefits due him under the LTD Plan; 3) recover employee welfare benefits, including health, life and dental insurance benefits, due to him as a disabled employee of Boston University; 4) enforce the

      present rights existing under the terms of the PLan; 5) clarify rights under the terms of the Plan; and 6) recover interest, costs and attorneys' fees as provided by ERISA.

3. Mr. Walko challenges the Defendants': 1) unreasonable and unlawful denial of his disability benefits despite the substantial medical evidence demonstrating his qualifications for said benefits; 2) unreasonable interpretation of the Plan provisions governing his claim for benefits; 3) pattern of rejecting and/or ignoring the substantial evidence supporting his total disability due to his physical condition; 4) failure to provide him with a full and fair review of his claim; and 5) failure to provide a reasonable claims procedure that would yield a decision on the merits of his claim.

## JURISDICTION

4. This Court has personal and subject matter jurisdiction over this case under 29 U.S.C. § 1132(e) and (f), without regard to jurisdictional amount or diversity of citizenship, in that the defendant's breach of its ERISA obligations took place in this district.

## PARTIES

5. Mr. Walko is a resident of Massachusetts. Mr. Walko is a vested participant in a Liberty employee benefit plan, within the meaning of 29 U.S.C. § 1002(2) (7). Mr. Walko has standing to bring this action under 29 U.S.C. § 1132(a).

6. The defendant, Liberty Life Assurance Company of Boston, is a for-profit corporation with its principal place of business at 175 Berkeley Street, Boston, Massachusetts, 02117. Liberty transacts business in Massachusetts and administers the Plan under which Mr. Walko is suing. Liberty is the party responsible for processing claims made under the Plan and making a final determination as to Plan participants' eligibility for LTD benefits.

7. At all times relevant to the claims asserted in this Complaint, Liberty purported to act as an ERISA claims fiduciary with respect to participants of the Plan, generally, and specifically, with respect to Mr. Walko, within the meaning of ERISA.

8. Boston University is an educational institution with its principal place of business in One Silber Way, Boston, Massachusetts. Boston University insures the Plan at issue, and is responsible for paying disability and retirement benefits under the terms of the Plan and for providing its disabled employees with ongoing employee welfare benefits under their respective plans.

9. At all times relevant to the claims asserted in this Complaint, Boston University purported to act as an ERISA claims fiduciary with respect to participants of the Plan, generally, and specifically, with respect to Mr. Walko, within the meaning of ERISA.

10. The Plan under which Mr. Walko is suing is a "long term disability plan" issued by Liberty and maintained continuously thereafter by Liberty and Boston University.

## STATEMENT OF FACTS

**Insurance Entitlement, Discretion, Plan Definitions**

11. As an employee of Boston University, Mr. Walko was entitled to long-term disability benefits under Boston University's contract of insurance with Liberty.

12. Mr. Walko was 62 years old and the Associate Director of Athletic Development - Planning Giving at Boston University at the time he became disabled in July 2008.

13. Mr. Walko had been an employee at Boston University for 23 years at the time he became disabled, not including eight years he spent working for the University from 1968-1976. Mr. Walko is also a 1968 graduate of Boston University.

14. With exception of nine years of his life, Mr. Walko spent every day from 1964 to the date of his disability in July 2008, at Boston University.

15. The Plan provides benefits to individuals who are disabled. The Plan provision defining disability is as follows:

    "Disability" or "Disabled" means:
    1. For persons other than pilots, co-pilots, and crew of an aircraft:
    i. If the Covered Person is eligible for the 24 Month Own Occupation Benefit, "Disability" or "Disabled" means during the Elimination Period and the next 24 months of Disability the Covered Person is unable to perform all of the material and substantial duties of his occupation on an Active Employment basis because of an Injury or Sickness; and
    ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

16. "Any Occupation" is defined by the Plan as "any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.

17. "Material and Substantial Duties" is defined as "responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified."

18. The Plan does not provide Liberty or Boston University with independent and final discretion to interpret the terms of the Plan and to evaluate Plan participants' eligibility for benefits.

**Mr. Walko's Claim for Disability Benefits**

19. Mr. Walko ceased working on July 3, 2008 due to GERD, Heavy Metal Toxicity, atrial fibrillation, osteoarthritis, thyroid endocrine imbalance, gall bladder disease and their associated symptoms.

20. Mr. Walko's disability results from significant functional limitations derived from the confluence of symptoms caused by his many medical conditions.

21. On January 21, 2009, Liberty approved Mr. Walko's claim for LTD benefits, with an onset date of December 31, 2008, following a 180-day elimination period.

22. Mr. Walko received short-term disability benefits from Liberty and Boston University during the elimination period.

23. Mr. Walko's application for long-term disability benefits was supported by his treatment providers, including, in particular, his primary treating physician, Dr. Richard Delany.

24. Liberty paid Mr. Walko LTD benefits without interruption until the fall/winter of 2010, when Liberty began investigating Mr. Walko's claim to determine whether he was eligible for ongoing disability benefits.

25. Liberty's investigation began within a month after Mr. Walko repaid Liberty over thirty thousand dollars in Social Security disability income he had received as a result of his total disability from the Social Security Administration.

26. Within two months of receiving Mr. Walko's Social Security money, Liberty arranged for Mr. Walko to undergo a medical examination with Stephanos Kales, M.D.

27. On August 8, 2011, Liberty terminated Mr. Walko's benefits on the basis of Dr. Kales' report following his examination of Mr. Walko.

28. Dr. Kales was retained by MLS National Medical Evaluation Services to conduct an examination of Mr. Walko at Liberty's request.

29. Dr. Kales determined that Mr. Walko was able to perform sedentary work based solely upon a review of Mr. Walko's conditions of heavy metal toxicity, electromagnetic sensitivity, geopathic stress and hyperthyrodisim. Dr. Kales did not consider Mr. Walko's cardiac or arthritic symptoms when making his determination that Mr. Walko was able to perform the duties of a sedentary occupation.

30. On or about February 3, 2012, Mr. Walko appealed Liberty's decision to terminate his claim for LTD benefits.

31. Mr. Walko submitted considerable medical and vocational information supporting his appeal, including without limitation objective verification of his functional limitations from his treatment providers.

32. On May 2, 2012, Liberty upheld its decision to deny Mr. Walko's LTD claim on the basis of a paper review of Mr. Walko's records conducted by cardiologist who neither met nor examined Mr. Walko.

33. The cardiologist did not speak to Mr. Walko's treatment providers, including Dr. Delany, when making the determination that Mr. Walko was able to return to work.

34. Based on the above reviews, Liberty concluded that Mr. Walko was able to perform the duties of sedentary to light occupations, and accordingly, was able to perform the duties of his own and any occupations under the terms of the Plan.

35. None of Liberty's reviewers considered the risk of relapse associated with Mr. Walko's cardiac condition, should Mr. Walko return to the workplace.

36. In addition to the functional limitations caused by his medical conditions, the risk of relapse prevents Mr. Walko from performing the duties of any occupation.

37. On August 18, 2011, the Social Security Administration ("SSA") approved Mr. Walko's claim for permanent and total disability benefits.

38. The SSA's determination that Mr. Walko is disabled from his own occupation provides independent, objective support for the functional limitations identified by Mr. Walko's treatment providers.

**Summary of Liberty's Review of Mr. Walko's Claim**

39. Mr. Walko has exhausted his administrative remedies pursuant to 29 C.F.R. 2560.503-1(1).

40. The Defendants and their medical reviewers arbitrarily dismissed Mr. Walko's self-reported symptoms, including without limitation, Mr. Walko's pain, fatigue and lack of endurance when they determined that Mr. Walko was not disabled.

41. The Defendants failed to have Mr. Walko's claim assessed by a medical provider with the appropriate credentials to evaluate his eligibility for benefits as required by ERISA's implementing regulations.

42. The Defendants failed to address or to analyze the findings of Mr. Walko's treating and evaluating physicians' opinions regarding Mr. Walko's symptoms, restrictions, limitations and disability.

43. Mr. Walko's total disability and eligibility for benefits is based on the substantial evidence in Liberty's possession.

44. The Defendants failed to respond to Mr. Walko's attempts to engage in a meaningful dialogue regarding the evaluation of his claim.

45. Any discretion to which the Defendants may claim they are entitled under the Plan is negated by their failure to provide Mr. Walko with an explanation as to its adverse action as proscribed by ERISA and its implementing regulations.

46. The Defendants failed to meet the minimum requirements for the denial of Mr. Walko's LTD benefits, in violation of ERISA, 29 U.S.C. 1133, which requires that upon a denial of benefits, the administrative review procedure must include adequate notice in writing setting forth the specific reasons for the denial of benefits and a reasonable opportunity for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

47. The Defendants have also failed to meet the Plan requirements for review of claims that have been denied.

48. The Defendants failed to provide Mr. Walko with a full and fair review of his claim for LTD benefits.

49. The decision to deny Mr. Walko's benefits was wrongful, unreasonable, irrational, solely contrary to the evidence, contrary to the terms of the Plan and contrary to law.

50. Liberty was influenced by its financial conflict of interest, as both the administrator of the Plan and the payer of benefits thereunder, when it denied Mr. Walko's benefits.

51. Remand is inappropriate in this matter as Liberty was offered two opportunities to review Mr. Walko's claim for benefits.

52. Due to the unlawful denial of benefits under ERISA, Mr. Walko has lost his rightful disability benefits, retirement benefits and employee welfare benefits, all provided as a result of his disability under the Plan. He has also suffered emotional distress as a result of the Defendants' actions.

53. Due to the unlawful denial of benefits under ERISA, Mr. Walko has also lost the use of his disability benefits.

54. Having exhausted the administrative procedures provided by the Defendants, Mr. Walko now brings this action.

**FIRST CAUSE OF ACTION**
**(Enforcement of Terms of Plan**
**Action for Unpaid Benefits)**
**(ALL DEFENDANTS)**

55. Mr. Walko realleges each of the paragraphs above as if fully set forth herein.

56. The Plan is a contract.

57. Mr. Walko has performed all of his obligations under the contract.

58. 29 U.S.C. § 1132(a)(1)(B) states that:

    A civil action may be brought ---

    1. by a participant or beneficiary –

        1. for the relief provided for in subsection (c) of this section, or

        2. to recover benefits due to him under the terms of her plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

59. The Defendants' actions constitute an unlawful denial of benefits under ERISA, as provided in 29 U.S.C. § 1132(a)(1)(B).

60. The Defendants unlawfully denied Mr. Walko's benefits in part by: (1) dismissing without explanation, the substantial evidence supporting Mr. Walko's claim for LTD benefits; and (2) denying Mr. Walko a full and fair review of their decision to deny his benefits.

61. In accordance with 29 U.S.C. §1132, Mr. Walko is entitled to LTD and retirement benefits under the Plan based upon his disabled status from his own and any occupation from and after August 2011 and continuing until he is no longer disabled.

62. The Defendants have refused to provide Mr. Walko with his disability benefits and are, therefore, in breach of the terms of the Plan and ERISA, which requires that the Defendants engage in a full and fair review of all claims and the administration of the Plan in the best interests of the Plan participants.

63. As a direct and proximate result of this breach, Mr. Walko has lost the principal and the use of his rightful disability and retirement benefits as well as his employee welfare benefits. In particular, Mr. Walko lost his health, life and dental benefits as well as his retirement contribution, as a result of Liberty's improper termination of his benefits.

**SECOND CAUSE OF ACTION**
**(Attorneys' Fees and Costs)**
**(ALL DEFENDANTS)**

64. Mr. Walko realleges each of the paragraphs above as if fully set forth herein.

65. Under the standards applicable to ERISA, Mr. Walko deserves to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g).

66. The Defendants have the ability to satisfy the award.

67. Mr. Walko's conduct of this action is in the interests of all participants suffering from physical conditions who subscribe to the Plan, and the relief granted hereunder will benefit all such participants.

68. The Defendants have acted in bad faith in denying Mr. Walko's disability benefits under the Plan.

69. The award of attorneys' fees against the Defendants will deter others acting under similar circumstances.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that the Court:

(1) Declare, adjudge and decree that Mr. Walko is entitled to ongoing disability benefits as calculated under the terms of the Plan.

(2) Declare, adjudge and decree that Mr. Walko is entitled to ongoing retirement benefits as calculated under the terms of the Plan.

(3) Declare, adjudge and decree that Mr. Walko is entitled to ongoing employee welfare benefits as detailed under the terms of the Plan and by Boston University's internal policies.

(4) Award Mr. Walko disability benefits and interest from the dates of the Defendants' breaches of contract.

(5) Order that the Defendants make restitution to Mr. Walko in the amount of all losses sustained by Mr. Walko as a result of the wrongful conduct alleged herein, together with prejudgment interest.

(6) Award Mr. Walko the costs of this action and reasonable attorneys' fees; and

(7) Award such other relief as the court deems just and reasonable.

Date: August 7, 2012					Respectfully submitted for the Plaintiff,


						By:	/s/ Mala M. Rafik
							Mala M. Rafik
							BBO No. 638075
							ROSENFELD RAFIK & SULLIVAN, P.C.
							184 High Street, Suite 503
							Boston, MA 02110
							T: 617-723-7470, ext. 205
							F: 617-227-2843
							E: mmr@rosenfeld.com